# LACKEY HERSHMAN
A LIMITED LIABILITY PARTNERSHIP

3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4241
Phone: (214) 560-2201
Fax: (214) 560-2203
www.lhlaw.net

April 18, 2005

United States District Court
Southern District of Texas
FILED

APR 1 9 2005

Michael N. Milby, Clerk of Court

**VIA FEDERAL EXPRESS**

Ms. Joan Davenport
Appellate Clerk
515 Rusk
Room 1217
Houston, Texas 77002

CA-05-1073

Re: *Highland Capital Management, L.P., et al. v. Chesapeake Energy Corporation and Robert A. Hefner, III,* Adversary No. 04-3370

Dear Ms. Davenport:

Accompanying this letter you will find Appellee's Designations for the Record in the appeal of the above-referenced adversary to the District Court. Appellants' Designations are being sent to you in a separate box.

If you have any questions, please feel free to give me a call at (214) 560-2213.

Thank you for your attention to this matter

Very truly yours,

LACKEY HERSHMAN, L.L.P.

*Edward J. Szymanski Jr.*

Edward J. Szymanski, Jr.

Enclosures

cc:  Paul E. Heath, Esq. (via facsimile w/o enclosures)

Tab 1

# ADVERSARY NO. 04-3370

# APPELLEE'S DESIGNATION OF RECORD TAB NO. 1

CAUSE NO. 03-00819

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., ML CBO IV (Cayman) LTD., PAMCO CAYMAN, LTD., PAM CAPITAL FUNDING, L.P., | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| | § | DALLAS COUNTY TEXAS |
| v. | § § | |
| RYDER SCOTT COMPANY, | § § | |
| Defendant. | § § | ____ JUDICIAL DISTRICT |



FILED 2003 JAN 27 PM 2:39

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Highland Capital Management, L.P. ("Highland"), ML CBO IV (Cayman), Ltd. ("ML CBO IV"), Pamco Cayman, Ltd. ("Pamco"), and Pam Capital Funding, L.P. ("Pam Funding") (collectively, "Plaintiffs") file this Original Petition against Ryder Scott Company ("Ryder Scott" or "Defendant") on personal knowledge as to all matters regarding themselves and on information and belief as to all other matters, as follows:

### I.

### PRELIMINARY STATEMENT

Ryder Scott is one of the largest, oldest and most respected reservoir-evaluation consulting firms in the petroleum industry. It is also the firm most widely used by publicly-traded companies to prepare year-end oil and gas reserve estimates in accordance with U.S. Securities and Exchange Commission ("SEC") guidelines. The guidelines prescribed by the SEC for the reporting of reserves are among the most conservative of their nature in the industry, far more conservative than those prescribed by the Society of Petroleum Engineers ("SPE"). Under SPE guidelines, a reserve should not be reported as "proved" unless there is at least a 90% probability that the quantities of oil actually recovered from that reserve will equal or exceed the estimate.

Using the conservative SEC guidelines, Ryder Scott was paid significant professional fees for generating estimates that the total net proved reserves held by Seven Seas Petroleum Inc.

("Seven Seas") in the Guaduas Oil Field in Colombia, South America for year-end 2000 were 48 million barrels of oil and that the total net proved reserves for this same field for year-end 2001 were 47.6 million barrels of oil.

Based upon these estimates of proved reserves provided by Ryder Scott, Plaintiffs invested in notes issued by Seven Seas. In August 2002, however, Ryder Scott dropped a bombshell on Plaintiffs. Seven Seas announced that Ryder Scott had done a reevaluation of the Guaduas Oil Field's net proved oil reserves and had reduced these allegedly proved reserves by almost two-thirds to approximately 16.3 million barrels of oil as of June 30, 2002. Predictably, Plaintiffs have suffered significant pecuniary losses as a direct result of this downward revision of Seven Seas' proved oil reserves. Thus, Ryder Scott's negligence in misrepresenting the total proved reserves in the Guaduas Oil Field has cost Plaintiffs millions of dollars.

## II.

## DISCOVERY CONTROL PLAN

1. Pursuant to the Texas Rules of Civil Procedure, Plaintiffs respectfully request that the Court order that discovery should be conducted under Rule 190 (Level 3).

## III.

## JURISDICTION AND VENUE

2. Jurisdiction is proper in this Court because Defendant Ryder Scott is a Texas limited liability company which has its principal place of business located in Houston, Texas, and the amount in controversy exceeds the minimum jurisdictional threshold of this Court.

3. Pursuant to Section 15.0001, *et seq.*, of the Texas Civil Practice & Remedies Code, venue is proper in this county because all or a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in Dallas County, Texas.

R 2587

## IV.

## THE PARTIES

4.  Plaintiff Highland is a Delaware limited partnership with its principal place of business in Dallas, Texas. Highland is the fund manager for the Plaintiffs described below.

5.  Plaintiff ML CBO IV, a Cayman Island LLC with its principal place of business in George Town, Grand Cayman Islands, owns approximately $5 million of the Seven Seas' notes (the "Notes").

6.  Plaintiff Pamco, a Cayman Island LLC with its principal place of business in George Town, Grand Cayman Islands, owns approximately $4.5 million of the Notes.

7.  Plaintiff Pam Capital Funding, a Cayman Island LLC with its principal place of business in George Town, Grand Cayman Islands, owns approximately $8.037 million of the Notes.

8.  Defendant Ryder Scott Company ("Ryder Scott") is a Texas limited liability company with its principal place of business located at 1100 Louisiana, Suite 3800, Houston, Texas 77002-5218. Defendant Ryder Scott company can be served by serving its registered agent, Raymond V. Cruce, 1100 Louisiana, Suite 3800, Houston, Texas 77002.

## V.

## FACTS APPLICABLE TO ALL COUNTS

**A.   Prior to July 2002, It Was Smooth Sailing With Seven Seas.**

9.  Seven Seas Petroleum Inc. ("Seven Seas") is an independent oil and gas company that, prior to its bankruptcy, was engaged in the exploration and development of oil and gas properties located in Colombia, South America.

10.  Since its original incorporation in 1995, Seven Seas had undergone a steady migration in its operational focus. Its original mission was to participate as a non-operator with small working interests in high potential oil and gas exploration ventures outside of North

America. In late 1995 and early 1996, however, Seven Seas participated in the El Segundo 1-E, the well that discovered the Guaduas Oil Field, located about 60 miles northwest of Bogata in Colombia's reserve-rich Magdalena Basin. In July 1996, Seven Seas increased its working interest in the Guaduas Oil Field from 15% to 51.7% through the acquisition of some of its working interest partners. At that time, Seven Seas also became the operator of the Guaduas Field, thus assuming all responsibilities for the exploration, development, and production from this field. During 1996 and 1997, Seven Seas drilled six delineation wells to determine the size of the Guaduas Field. Four of these wells proved to be successful oil producers. In March 1997, Seven Seas increased its working interest in the Guaduas Field to 57.7% by purchasing yet another of its working interest partners.

11.  In January 1998, shares of Seven Seas began trading on the American Stock Exchange. In April 1998, Seven Seas issued $110 million of 12.5% senior subordinated notes to fund the expansion of its operations in Colombia. During 1998, Seven Seas drilled four more delineation wells. Two of these wells proved to be successful oil producers.

12.  When shares of Seven Seas started to trade on the American Stock Exchange in January 1998, Seven Seas became required to report its reserve estimates in its SEC filings using the definitions of reserves found in Rule 4-10(a) of Regulation S-X of the Securities Exchange Act of 1934.

13.  The reservoir-evaluation consulting firm selected by Seven Seas to calculate the reserve estimates for the Guaduas Field, which would be included in Seven Seas' SEC filings, was Defendant Ryder Scott. Ryder Scott is one of the largest, oldest and most respected reservoir-evaluation consulting firms in the petroleum industry. It is the most widely used consulting firms for preparing year-end reserve estimates in accordance with U.S. SEC guidelines. Under the business practices at that time, Ryder Scott knew or should have known that its evaluation of proved reserves for the Guaduas Oil Field would be examined and relied upon by a limited class of persons, namely the discreet group of large financial institutions in the

**R 2589**

United States that would invest in the 12.5% senior subordinated notes offered by Seven Seas to fund its Colombian operations.

14.  By August 2000, Seven Seas started its post-exploration phase production of the Guaduas Oil Field, producing between 4,000 and 6,000 barrels of oil per day and trucking this production to nearby refineries.  In May 2001, Seven Seas commenced a nine-well development drilling program for the Guaduas Oil Field.  In July 2001, Seven Seas completed a 40-mile pipeline connecting the Guaduas Field to Colombia's existing pipeline infrastructure.

15.  On April 2, 2001, Seven Seas filed its Form 10-K for the year ending December 31, 2000. In that 10-K, Seven Seas reported that Ryder Scott had estimated that the total net proved reserves for Seven Seas' interest in the Guaduas Oil Field were 47.9 million barrels of oil, having a discounted net present value exceeding $394 million.  Of course, Ryder Scott, knew or should have known that each year-end reserve estimate it produced for Seven Seas would be relied upon by bondholders and potential bondholders in making their decisions to acquire and/or hold their investments in Seven Seas notes.

16.  In reliance upon the information provided by Ryder Scott regarding Seven Seas total net proved reserves, Plaintiffs purchased Seven Seas' 12.5% senior subordinated notes in the following amounts on the following dates:

| Date | Purchaser | Amount |
| --- | --- | --- |
| January 9, 2002 | Pamco Cayman | $ 3,000,000.00 |
| January 9, 2002 | ML CBO IV | $ 3,000,000.00 |
| January 9, 2002 | Pam Capital | $ 3,927,000.00 |
| January 11, 2002 | ML CBO IV | $ 1,500,000.00 |
| February 27, 2002 | Pam Capital | $ 2,000,000.00 |
| April 2, 2002 | Pam Capital | $ 1,610,000.00. |

17.  On April 16, 2002, Seven Seas filed its Form 10-K for the year ending December 31, 2001. In that 10-K, Seven Seas reported that Ryder Scott had estimated that the total net proved reserves for Seven Seas' interest in the Guaduas Oil Field were 47.6 million barrels of oil,

with a discounted net present value of $272.3 million. The decrease in the present value was due principally to a 26% reduction in the price of oil on December 31, 2001 versus the price of oil on December 31, 2000. Even with this decrease in the present value of Seven Seas' interest in the total net proved reserves in the Guaduas Oil Field, these reserves still had a present value higher than the debt owed by Seven Seas.

18.  In reliance upon Seven Seas total net proved reserves as estimated by Ryder Scott, on April 18, 2002, Plaintiffs purchased additional Seven Seas' 12.5% senior subordinated notes in the following amounts:

| | |
|---|---|
| Pamco Cayman | $ 2,000,000.00 |
| Pam Capital | $ 500,000.00. |

**B.   Ryder Scott's Change In Reserve Estimates Sinks Plaintiffs' Investment In Seven Seas.**

19.  On July 1, 2002, Seven Seas announced that it was suspending further development drilling in the Guaduas Oil Field pending a reassessment of its recently drilled wells, its then-current production data, and the results of planned production enhancement efforts on its existing wells. On August 14, 2002, it announced its results for the three-month and six-month periods which ended on June 30, 2002. Based upon a report provided by Ryder Scott, Seven Seas' proved reserves were revised downward to 16.3 million barrels. This represented a reduction in supposedly proved reserves of 31.3 million barrels of oil. The discounted net value of Seven Seas' total net proved reserves in the Guaduas Oil Field dropped from $272.3 million on December 31, 2001 to approximately $136 million on June 30, 2002 — even though oil prices on June 30, 2002 were higher than the prices on December 31, 2001. Thus, just four months after Ryder Scott had allowed Seven Seas to publish its estimate that Seven Seas' total net proved reserves in the Guaduas Oil Field were 47.6 million barrels of oil, Plaintiffs saw Ryder Scott's estimated reserves reduced by an astounding 66% – by approximately 31.3 million barrels of oil. Needless to say, Plaintiffs also saw the value in their investment in Seven Seas' senior

R 2591

subordinated notes disappear. Following Ryder Scott's dramatic downward revision of Seven Seas proved reserves, Seven Seas was no longer able to meet its financial obligations.

20. On December 20, 2002, Seven Seas was filed into an involuntary Chapter 7 bankruptcy.

## VI.

## CLAIMS

**A.  Count One: Negligent Misrepresentation.**

21. Plaintiffs reallege and incorporate all allegations set forth above.

22. Ryder Scott's representations regarding its reserve estimates for Seven Seas' total net proved reserves in the Guaduas Oil Field, as described above, constituted representations made by Ryder Scott in the course of its business.

23. Ryder Scott owed a duty to Plaintiffs to use reasonable care and/or competence in obtaining and/or calculating and/or communicating the information which constituted Ryder Scott's reserve estimates for the Guaduas Oil Field because, under the business practices at the time of the subject transactions, Plaintiffs were: 1) part of a limited group of persons for whose benefit and guidance Ryder Scott intended to supply its reserve estimates for the purposes of being relied upon in making business decisions, or 2) part of a limited group of persons for whom Ryder Scott knew or should have known Seven Seas intended to supply with Ryder Scott's reserve estimates for the purpose of being relied upon in making business decisions.

24. Ryder Scott failed to use reasonable care and/or competence in obtaining and/or calculating and/or communicating the information which constituted Ryder Scott's reserve estimates for Seven Seas' total net proved reserves in the Guaduas Oil Field.

25. As a result of Ryder Scott's failure to use reasonable care and competence in obtaining and/or calculating its reserve estimates for Seven Seas' total net proved reserves in the Guaduas Oil Field, Ryder Scott supplied "false information" to Plaintiffs for the guidance of Plaintiffs in Plaintiffs' business decisions.

R 2592

26. Plaintiffs justifiably relied upon the reserve estimates supplied by Ryder Scott for Seven Seas' total net proved reserves in the Guaduas Oil Field and such justifiable reliance was the proximate cause of the pecuniary loss suffered by Plaintiffs, as described above.

27. Thus, because of Ryder Scott's negligent misrepresentations, Plaintiffs have lost almost all of their investment in over $17.5 million worth of the Notes, for which loss Plaintiffs now sue.

## VII.

## JURY DEMAND

28. Plaintiffs demand a jury on all issues.

## VIII.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant all of the relief requested herein and award:

1. Actual damages for all pecuniary loss suffered by Plaintiffs as shown by competent evidence at the time of trial;

2. Prejudgment and post-judgment interest at the highest rate(s) allowed by law;

3. Costs of court; and

4. Such further relief, at law or in equity, which this Court may deem just and proper and to which Plaintiffs may be entitled.

R 2593

Respectfully submitted,

LACKEY HERSHMAN, L.L.P.

By: *Edward J Szymanski Jr.*
Paul B. Lackey
State Bar No. 00791061
Michael P. Aigen
State Bar No. 24012196
Edward J. Szymanski, Jr.
State Bar No. 19599700

3102 Oak Lawn Avenue
Suite 700
Dallas, Texas 75219-4241
Telephone:   (214) 560-2201
Telecopier:   (214) 560-2203

**ATTORNEYS FOR PLAINTIFFS**

R 2594