IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In Re:<br>SEVEN SEAS PETROLEUM, INC.<br>　　　　Debtor. | Case No. 02-45206-H2-11<br>Adversary Proceeding No. 04-3370 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., ML CBO IV (CAYMAN) LTD., PAMCO CAYMAN, LTD., PAM CAPITAL FUNDING, L.P., FAMCO VALUE INCOME PARTNERS, L.P., and FAMCO OFFSHORE LTD.,<br>　　　　Appellants,<br>v.<br>CHESAPEAKE ENERGY CORP.,<br>　　　　Appellee. | CIVIL ACTION NO. H-05-1073 |

## MEMORANDUM OPINION AND ORDER

Pending before the court is an appeal that challenges a bankruptcy court's jurisdiction over a creditor's removal of certain state court actions against it. On February 23, 2005, the Bankruptcy Court issued its "Memorandum Opinion, Findings and Conclusions in Support of Separate Orders Denying Remand, Denying Abstention, Denying Amendment of Preliminary Injunction and Dismissing Chesapeake Energy Corp" (Bk. Doc. 39 in Adv. Proc. 04-3577 & Bk. Doc. 37 in Adv. Proc. 04-3370)[1] (hereafter "Memorandum Opinion"). By separate orders, the Bankruptcy Court dismissed all claims against Chesapeake Energy Corp. (Bk. Doc. 38 in Adv. Proc. 04-3370) and denied remand (Bk. Doc. 39 in Adv. Proc. 04-3370). This appeal followed.[2]

---

[1] "Bk. Doc. __ in Adv. Proc. 04-3577" refers to docket entries in adversary proceeding 04-3577, initiated by Seven Seas seeking a preliminary injunction against Appellants. "Bk. Doc. __ in Adv. Proc. 04-3370" refers to docket entries in the adversary proceeding 04-3370, initiated by Chesapeake Energy Corp's removal of certain state claims against it. The Memorandum Order encompasses and addresses both adversary proceedings.

[2] There is a separate appeal pending before the court concerning the Bankruptcy Court's opinion and order denying modification of the preliminary injunction *See Highland Capital Mgm't, L.P., et al. v. Seven Seas Petroleum, Inc. (In re Seven Seas Petroleum, Inc.)*, Civil Action No. H-05-1104. The court will address the injunction

The Appellants are Highland Capital Management, L.P. ("Highland"), ML CBO IV (Cayman) Ltd. ("ML CBO IV"), PamCo Cayman Limited ("PamCo"), Pam Capital Funding, L.P. ("Pam Capital"), Famco Value Income Partners, L.P. ("Famco Value"), and Famco Offshore Ltd. ("Famco Offshore") (collectively "Appellants" or "Bondholders"). Appellee is Chesapeake Energy Corp. ("Chesapeake"). The debtor is Seven Seas Petroleum, Inc. ("Seven Seas") for whom Ben Floyd acted as Trustee (hereafter "Floyd" or "Trustee").

## I. BACKGROUND AND RELEVANT FACTS

### A. The Search for Oil that Ended in Bankruptcy

Seven Seas explores and develops oil and gas properties, and the company's most significant asset is the oil reserves in the Guaduas Oil Field, located in Columbia.[3] Initially successful, Seven Seas began trading on the American Stock Exchange and hired geologist Ryder Scott Company ("Ryder Scott") to provide reservoir valuations required for SEC reporting. Based on Ryder Scott's valuations of the "proved reserves,"[4] Appellants purchased millions of dollars in bonds, the Unsecured Notes, between January 1999 and April 2002.

In 2002, Seven Seas decided to explore for more oil and mortgaged almost all its assets to fund that exploration. It issued Chesapeake and Robert Hefner III ("Hefner"), the then chairman and CEO of Seven Seas, the Secured Notes, which were senior to the Unsecured Notes. The oil prospect failed, and in August 2002, Ryder Scott issued a revised "proved reserves" statement that substantially reduced the estimated value of the reserves.

On December 20, 2002, the Bondholders, along with other unsecured creditors, filed an involuntary bankruptcy petition against Seven Seas under Chapter 7 of the Bankruptcy Code.

---

appeal by separate opinion and order.

[3] The underlying facts of this appeal are predominately undisputed.

[4] "Proved oil and gas reserves are the estimated quantities of crude oil, natural gas, and natural gas liquids which geological and engineering data demonstrate with reasonable certainty to be recoverable in future years from known reservoirs under existing economic and operating conditions, i.e., prices and costs as of the date the estimate is made." 17 C.F.R. § 210.4-10(a)(2).

(Bk.. Doc. 1).[5]   On January 13, 2003, Seven Seas moved to convert the petition into a reorganization under Chapter 11 and moved to appoint a trustee. (Bk. Docs. 12 & 15). The next day, the Bankruptcy Court granted both motions, and Floyd was appointed Trustee for Seven Seas. (Bk. Docs. 21 & 25).

### B.   Chesapeake's Release & The D&O Litigation

During the course of the bankruptcy proceedings, the Trustee filed a complaint against Seven Seas' secured lenders, including Chesapeake. (Bk. Doc. 129).[6] The complaint alleged tortious interference, recharacterization, equitable subordination, interference with and/or breach of fiduciary duty, turnover of funds, preferential transfer and fraudulent transfer. *Id*. Subsequently, Hefner, as well as other directors and officers, were added to the complaint. Trustee's 1st Am. Adv. Compl. (Bk. Doc. 12 in Adv. Proc. 03-3532). The Trustee asserted claims for breach of the duty of care not only to Seven Seas but also to the general creditors, who were allegedly owed a duty of care by the directors "[b]ecause [Seven Seas] was either insolvent or of doubtful solvency . . .[such that] the interests of [Seven Seas] coincided with the interest of its creditors . . ." *Id*. ¶ 30.  The Trustee also asserted claims for breach of the duty of care (*id.* ¶ 33) and breach of fiduciary duty (*id* ¶ 35, 37).  In alleging the breach of fiduciary duty claim, the Trustee included a duty to the creditors because of Seven Seas' actual or likely insolvency. *Id*. ¶ 36.

On August 2, 2003, the Trustee filed the Chapter 11 Trustee's Second Amended Plan (the "Plan"). The Plan included terms of a comprehensive settlement and mutual release agreement of the bankruptcy estate's claims against Chesapeake and certain other secured lenders. Plan Art. 8 (Bk. Doc. 220); *see also* R. 2796-2801. The Plan expressly excluded estate claims

---

[5] "Bk. Doc. ___" refers to docket entries in the main Seven Seas bankruptcy proceedings, Cause No. 02-45206, in the United States Bankruptcy Court for the Southern District of Texas.

[6] *See also* Trustee's Original Adv. Compl. (Bk. Doc. 1 in Adv. Proc. 03-3532). "Bk. Doc. ___ in Adv. Proc. 03-3532" refers to docket entries in the adversary proceeding brought by the Trustee for all of Seven Seas' (and its creditors') causes of action relating to the forced bankruptcy.

against several named parties, one of whom was Hefner. Plan §§ 8.2(k) & (*l*) (R. 2800-01). On August 4th, the Bankruptcy Court held the confirmation hearing on the Plan. The Committee of the Unsecured Creditors and the Appellants, as creditors, were present at the hearing (R. 2848), and there was no objection to the Plan confirmation generally, or to the release of Chesapeake specifically. Indeed, "[t]he settlement agreement was the centerpiece of the plan of reorganization that was approved overwhelmingly by the creditors of the estate (including [the Bondholders])." Memorandum Opinion at 2; *see also* Ballot Tabulation (R. 1998, 2859).

Two days later, the Bankruptcy Court entered an order confirming the Plan. *See* Confirmation Order (Bk. Doc. 223). The Confirmation Order approved the settlement and release as set forth in Article 8 of the Plan and appointed Floyd as Seven Seas' "Sole Officer," exclusively authorized to distribute Seven Seas' assets in accordance with the Plan. *Id.* ¶¶ 3, 10. The Order also provided, in relevant part:

> Injunction-Discharged Debts. The commencement or continuation of any action, or the employment of process with respect to any debt discharged hereunder, or an act to collect, recover or offset any debt discharged hereunder other than in the manner provided in the Plan, as a personal liability of the Debtor or property of the Estate be, and is hereby, forever enjoined.

*Id.* ¶ 5.

Within days of the Plan's confirmation, the Trustee filed his notice dismissing the holders of Senior Secured Notes, including Chesapeake, from the adversary proceeding with prejudice. *See* Trustee's Notice of Dismissal (Bk. Doc. 11 in Adv. Proc. 03-3253); *see also* R. 2863-64.

    C. <u>Bondholder's Claims in State Court</u>

Shortly after Seven Seas was forced into bankruptcy, Appellants filed a state court petition alleging negligent misrepresentation and fraud against Ryder Scott. Approximately three months after Chesapeake's release from the adversary proceeding (and about ten months after initially filing suit), the Bondholders amended their state petition to include Chesapeake and Hefner as defendants.

In their petition, the Appellants alleged that they purchased and held various amounts of the Unsecured Notes because they believed the reserve estimates that Ryder Scott made and that Seven Seas included in the Form 10-K disclosures. *See* Bondholders' 2nd Am. Compl. ¶¶ 29-32 (Doc. 2 Ex. G). Famco Value and Famco Offshore claim they relied on the 10-K forms filed by Seven Seas on March 31, 1998, March 31, 1999, and March 31, 2000, when they purchased Unsecured Notes between January 14, 1999 and June 19, 2000. *Id.* at ¶ 29. PamCo Cayman, Pam Capital, and ML CBO IV assert they relied on the 10-K form filed by Seven Seas at the end of 2000 when they purchased unsecured notes between January 9, 2002 and April 2, 2002. *Id.* ¶ 30. PamCo and Pam Capital allege that they relied on 10-K form filed by Seven Seas on April 16, 2002, describing the activities of Seven Seas in 2001, when they purchased additional unsecured notes on April 18, 2002. *Id.* ¶ 32. Highland did not purchase any Unsecured Notes itself, but it is the fund manager for PamCo, Pam Capital, and ML CBO IV. *See id.* ¶ 4.

The Appellants separated their claims against Ryder Scott, Chesapeake, and Hefner into five separate counts. The first three counts were against Ryder Scott exclusively. The first count, alleging negligent misrepresentation, argued that Ryder Scott had negligently overestimated the oil reserves that Seven Seas possessed. *Id.* ¶¶ 37-44. The second count alleged common law fraud, claiming that Ryder Scott's overestimation of the oil reserves was not only negligent but also fraudulent. *Id.* ¶¶ 45-50. The third count alleged "civil liability as an 'aider' under Art. 581-33(f)(2) of Texas Revised Civil Statutes" and argued that "Ryder Scott is civilly liable as an aider of fraud in the sale of a security[.]" Id. at 17, 53. The fourth count ("Count 4") only implicated Chesapeake and Hefner and complained of "conspiracy to defraud" whereby Chesapeake, Hefner, and Seven Seas conspired to defraud the holders of the Unsecured Notes by (1) "issuing and purchasing the Secured Notes . . . in order to decrease the assets available to investors in the Notes; and (2) "employing the material misrepresentations and/or omissions contained in Ryder Scott's reserve reports in order to induce potential investors and existing investors in Seven Seas Notes, including [Appellants], to either acquire interests in such Notes or

to refrain from selling interests in such Notes." *Id*. ¶ 60.  Count Four also argued that "Chesapeake Energy and Hefner knew that the misrepresentations and/or omissions contained in Ryder Scott's reserve estimates were false or had been made with reckless disregard as to their truth."  *Id*.  The fifth count ("Count Five") alleged "aiding and abetting fraud" against Chesapeake, Hefner, and Ryder Scott and argued that all three were "liable for all damages caused by the aforementioned fraudulent schemes because each of these Defendants was aware the conduct by Seven Seas constituted a breach of duty and gave substantial assistance or encouragement to Seven Seas to continue with the scheme."  *Id*. ¶ 63.

### D.     The Chesapeake Removal & Dismissal

Chesapeake removed the Bondholders state claims against to the United States District Court for the Southern District of Texas, and the claims were referred to the Bankruptcy Court.  *See* Order Granting Removing Def.'s Mot. to Refer (Bk. Doc. 1 in Adv. Proc. 04-3370).  On May 10, 2004, Chesapeake filed its Motion to Implement and Enforce Plan of Reorganization in the main bankruptcy proceeding, seeking dismissal of the Bondholder's claims (conspiracy and aiding and abetting) against it and arguing that because these claims were "general and derivative in nature, they belong solely to the Debtor's bankruptcy estate and [the Bondholder's] actions [were] nothing more than an attempt to control this estate property to seek an impermissible recovery." Mot. to Enforce Plan ¶ 30 (Bk. Doc. 302).  Appellants filed their response in opposition (Bk. Doc. 312), and Seven Seas, through Floyd, filed a response in support (Bk. Doc. 318), arguing that the same reasoning applied to Hefner.  Hefner did not, however, remove the Bondholder's state claims against him.  The Bankruptcy Court consolidated the Motion to Enforce the Plan with the motions to remand and dismiss in adversary proceeding 04-3370. (Bk. Doc. 320).  The parties continued to brief the issues in the adversary proceeding.  On October 29, 2004, the Bankruptcy Court held a consolidated hearing on the motions.[7]

---

[7] The hearing also concerned Appellants' motion for reconsideration of the preliminary injunction issued with respect to the claims against Hefner, which the court will turn to momentarily.

The Bankruptcy Court ultimately agreed with Chesapeake and Seven Seas and denied both the Bondholder's motion to remand and dismissed Chesapeake as a defendant in accordance with the agreed settlement and mutual release. Order Den. Remand and Final J. Dismiss. Claims Against Chesapeake (Bk. Docs. 39 & 38 in Adv. Proc. 04-3370). In its Memorandum Opinion, the Bankruptcy Court concluded that (1) the Bondholders' claims against Chesapeake and Hefner were property of the estate; (2) the" well-pleaded complaint" rule did not require remand, and that (3) the assertion of Appellants' claims against Chesapeake would be a plan modification. Memorandum Opinion 4-10. The appeal at bar followed.

    E.    <u>The Seven Seas Injunction</u>

As previously noted, Hefner did not join in Chesapeake's removal action. Rather, on June 8, 2004, Hefner filed a motion for summary judgment asserting that the Bondholders lacked standing to bring claims against him because their causes of action belonged exclusively to the Seven Seas' bankruptcy estate. Ryder Scott joined in Hefner's motion for summary judgment.

On July 26, 2004, Seven Seas initiated an adversary proceeding, 04-3577, against the Bondholders by filing an injunction complaint, which sought to enjoin the state court proceeding against Hefner. Inj. Compl. (Bk. Doc. 1 in Adv. Proc. 04-3577). Seven Seas argued that Appellants' conspiracy to defraud (Count 4) and aiding and abetting (Count 5) claims against Hefner were property of the bankruptcy estate; but, if the Bankruptcy Court determined otherwise, then Seven Seas sought a preliminary stay of Counts 4 and 5 against Hefner. *Id.* ¶¶ 12-13.

After holding an evidentiary hearing, the Bankruptcy Court granted the preliminary injunction. The Bondholders filed a motion to reconsider (Bk. Doc. 31 in Adv. Proc. 04-3577), reurging that the Bankruptcy Court lacked jurisdiction to issue the injunction and that Seven Seas failed to prove irreparable harm.

The motion for reconsideration was argued at the October 29th consolidated hearing. Thereafter, the Bankruptcy Court denied amendment of the preliminary injunction (Bk.

Doc. 40 in Adv. Proc. 04-3577) in accordance with its Memorandum Opinion, which found that the conspiracy and aiding and abetting counts against Hefner in the state court proceeding were the property of Seven Seas. The Bondholders have filed a separate appeal on the grant of preliminary injunction, which is pending before this court in Civil Action No. H-05-1104. The court addresses the injunction appeal by separate opinion and order.

## II. LAW

This court exercises jurisdiction over the pending appeal from the Bankruptcy Court's pursuant to 28 U.S.C. §158(a). An appeal from a bankruptcy court to a district court is "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. §158(c)(2). Thus, this court applies the same standard of review that a circuit court would employ. *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989). Specifically, the court reviews findings of fact by the Bankruptcy Court under the clearly erroneous standard and reviews issues of law and mixed questions of law and fact *de novo*. *Universal Seismic Assocs. Inc. v. Harris County (In re Universal Seismic Assocs., Inc.)*, 288 F.3d 205, 207 (5th Cir. 2002). Moreover, the court may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 245 (5th Cir. 2006) (citing *Bustamante v. Cueva (In re Cueva)*, 371 F.3d 232, 236 (5th Cir.2004) (internal quotations omitted)).

## III. ANALYSIS

The heart of the controversy on this appeal is whether the Bankruptcy Court had subject-matter jurisdiction over the removal of the Chesapeake claims in state court. Although the parties and the Bankruptcy Court brave the quagmire of whether claims against a third-party for fraud and conspiracy, which could potentially be brought by either a debtor or a creditor, are the property of the bankruptcy estate or the personal claims of the creditor, the court need not reach this issue because (1) subject-matter jurisdiction was satisfied through Appellants' attempt to

subvert the Plan, and (2) the Bankruptcy Court permissibly enforced the Plan's release against Appellants through equitable principles.

It is well-established that after a debtor's reorganization plan has been confirmed, the breadth of the Bankruptcy Court's subject-matter jurisdiction is contracted to cover only those "matters pertaining to the implementation or execution of the plan." *Bank of Louisiana v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001); *see also U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002). In *U.S. Brass Corp.*, the confirmed plan had expressly provided that certain claims would be resolved in a court of competent jurisdiction. Nevertheless the debtor asked the court to approve an agreement to liquidate those claims through binding arbitration. The insurers objected that the agreement was an impermissible modification of the confirmed plan. The Fifth Circuit supplemented its holding in *Craig's Stores* by concluding that there was post-confirmation jurisdiction over the debtor's motion because it not only affected the plan's implementation or execution, but also because the court had bankruptcy jurisdiction where "bankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' post-confirmation rights and responsibilities" and "will certainly impact compliance with or completion of the reorganization plan"; thus the Fifth Circuit concluded that the motion related to the plan's implementation or execution. *Id.* at 305.  Here, the core controversy before the Bankruptcy Court was the enforcement or "implementation" of the Plan, and more specifically, the release provisions under the Plan.  Appellants were effectively seeking to have the state court invalidate the Plan's linchpin provision, the release and settlement.  This is exactly the type of collateral attack on, or attempted modification of, a confirmed plan the Bankruptcy Court has post-confirmation jurisdiction to prevent.  *See U.S. Brass*, 301 F.3d at 305.  Under *Craig's Stores*, the Bankruptcy Court had jurisdiction to "implement the plan."[8]

---

[8] Appellants also attack the Chesapeake's removal for failing the "well-pleaded complaint" rule. This rule requires that federal-question jurisdiction under the general removal statute, 28 U.S.C. § 1441, be apparent on its face without considering *inter alia* affirmative defenses.   Chesapeake removed the Appellants claims against

Having found that the Bankruptcy Court retained subject-matter jurisdiction, the court affirms the use of estoppel principles to bar Appellants' claims against Chesapeake. Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation. *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999). Three requirements must be met for it to apply in this case: (1) the Bondholders' position is clearly inconsistent with a previous one; (2) the Bankruptcy Court accepted the previous position; and (3) the non-disclosure was not inadvertent. *See Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004). Here, the Bondholders initiated the bankruptcy case, and specifically approved the Plan and its release of Chesapeake. They represented to the Bankruptcy Court that they were releasing Chesapeake from its alleged misconduct. To subsequently reverse course and sue Chesapeake on the very same conduct (and only months after approving the release) is clearly inconsistent with the Appellants representations to the Bankruptcy Court. The Bankruptcy Court made these same determinations in dismissing Chesapeake:

> [The Bondholders] initiated this bankruptcy case and participated in a very material way in the plan confirmation that was based on Chesapeake's release. As creditors, [the Bondholders] benefit from that release. [Bondholders], through the Unsecured Creditors' Committee, represented to the Court that Chesapeake would be released from claims based on alleged misconduct that is essentially the same misconduct that [they] have now amended their complaint to assert. The Court confirmed the plan on [the Bondholders'] representations. To allow the [Bondholders] immediately thereafter to amend an existing complaint to sue Chesapeake would, indeed, be allowing Plaintiffs to play "fast and loose" with the court.

---

it under 28 U.S.C. § 1452, which extends removal jurisdiction to all proceedings "related to" a bankruptcy, as provided in 28 U.S.C. § 1334(b) ("the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"). Here, Appellants attempt to circumvent the Plan clearly "relates to" a core bankruptcy proceeding and falls within the broader removal jurisdiction provided for in § 1452. The fact that the suit "is brought under a different label in an independent action cannot camouflage its inevitable effect [on the bankruptcy proceeding]." *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 361 (5th Cir. 1972); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, Case MDL-1446, Civ. A. H-01-3624, Civ. A. G-02-0299, 2002 WL 32107216, *14-23 (S.D. Tex. Aug. 12, 2002) (noting that the test for "related to" bankruptcy jurisdiction under § 1334(b) is whether the outcome of the proceeding may conceivably affect the estate being administered in bankruptcy, including suits among third parties that have an effect on the bankruptcy estate).

Memorandum Opinion at 11. These tactics fall squarely within the ambit of judicial estoppel, and the court agrees that enforcing the Plan against the Bondholders prevents them from playing "fast and loose" with the Bankruptcy Court.

## IV. CONCLUSION

Accordingly, it is hereby

**ORDERED** that the Bankruptcy Court's orders dismissing Chesapeake Energy Corp. and denying remand are **AFFIRMED**.

Signed at Houston, Texas this 30th day of March, 2007.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE